J-S70019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :         PENNSYLVANIA
  :
       v.   :
  :
  :
  :
TERRY DAVID KLINE, JR.   :
  :
      Appellant   :   No. 940 MDA 2017

Appeal from the PCRA Order May 12, 2017
In the Court of Common Pleas of Berks County
Criminal Division at No(s):  CP-06-CR-0005241-2007

BEFORE:  GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY SHOGAN, J.:           **FILED NOVEMBER 28, 2017**

Appellant, Terry David Kline, Jr., appeals from the order that denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.[1]  We affirm.

A prior panel of this Court set forth the relevant facts and procedural history of this matter as follows:

> [O]n the night of September 6, 2007, five men including Appellant, his brother, Kenneth Kline (hereinafter referred to as "Kenneth"), Timothy Gearhart, Derik Houser, and Andrew Weber, planned to go to Shorty's Bar in Kutztown to celebrate Appellant's twenty-fourth birthday.  Houser drove the five men in his vehicle and the group arrived at the bar between midnight and 12:30 a.m. on the morning of September 7, 2007.

---

[1]  Following a jury trial, Appellant was convicted of aggravated assault, 18 Pa.C.S. § 2702(a)(1), conspiracy to commit third-degree murder, 18 Pa.C.S. § 903, and conspiracy to commit aggravated assault, 18 Pa.C.S. § 903.

After the bar closed at approximately 2:00 a.m., the five men congregated outside near Houser's car. A witness, who was also standing outside of the bar, claimed that Appellant, Kenneth, and Gearhart were "hyped up" and "excited," and that Appellant wanted to fight someone just for the sake of fighting. N.T. Trial, 11/3-7/08, at 167. The witness also stated that Appellant was out of control and argued with another individual in the vicinity of the group. Houser interceded, however, and at his urging, Appellant, Kenneth, Gearhart, and Weber got into Houser's car to go home.

Once underway, however, Appellant began accusing Houser of "disrespecting him," and challenging him to a fight. *Id.* at 326. Appellant then jumped out of Houser's car, took off his shirt, and urged Houser to get out of the car to fight him. Houser was able to calm Appellant down and convince him to get back into the vehicle.

As the group resumed their journey home, they came upon three individuals standing on the sidewalk speaking to one another. Gearhart suggested that if they wanted to start a fight, they should provoke one of these three people. Appellant, Kenneth, and Gearhart told Houser to stop, at which point the three men got out of Houser's car, said "let's fuck somebody up," and approached the three individuals. *Id.* at 331. Houser and Weber drove around the corner and parked near the intersection of Main and Noble Streets. Meanwhile, Appellant, Kenneth, and Gearhart began to aggressively accuse the three individuals of making derogatory statements to them. One of the individuals claimed that the men were yelling and getting close enough to make her feel threatened. When a police car drove down a nearby alley and someone yelled, "cops," *id*. at 218, Appellant, Kenneth, and Gearhart left the scene and walked toward Houser's car parked on Main Street.

When the three men reached Main Street, they encountered another bystander, Kyle Quinn. Quinn, who was walking to his dormitory, was talking on his cell phone when he was confronted by Kenneth. Kenneth asked Quinn to whom he was speaking, and when Quinn responded that he was not speaking to Kenneth, Kenneth grabbed [Quinn's] cell phone and threw it into the street. Appellant, Gearhart, and Kenneth surrounded Quinn and began yelling at him. Eventually, Appellant threw a punch at Quinn. In the midst of the fight,

- 2 -

Gearhart picked up a table leg, which he found in the vicinity, and swung it with great force, striking Quinn on the left side of his face. Quinn fell to the sidewalk, bleeding profusely. The blow to Quinn's head tore the artery at the base of his brain, which caused massive bleeding resulting in his death.

After Quinn fell to the ground, Kenneth and Gearhart got into Houser's car, but Appellant continued to stand over Quinn's body, saying, "I don't hear you talking anymore, bitch," and calling Quinn other derogatory names. When Appellant finally returned to the car, he and his two cohorts encouraged Houser to drive away. However, before they could flee, Police Officer Corporal Paul Clery of the Kutztown Borough Police Department pulled alongside Houser's car and blocked their escape. Within minutes, additional police officers arrived at the scene and each of the five men were taken into custody.

Both Appellant and Kenneth subsequently gave statements to police on September 7, 2007, and again on September 10, 2007. While the men initially denied any involvement in the attack on Quinn, Appellant eventually admitted that Kenneth approached Quinn and exchanged words, after which Kenneth took Quinn's phone and threw it across the street. Appellant also confessed that he began arguing with Quinn, and that he saw Gearhart pick up an object and hit Quinn with it. He stated that Quinn fell to the ground and he, Kenneth, and Gearhart got into Houser's car to flee. Appellant told police that he began arguing with Quinn in order to protect his brother, but acknowledged that Quinn did not strike at any of the three men.

Appellant, Kenneth, and Gearhart were all charged with various offenses in connection with Quinn's assault and death. Gearhart subsequently entered a guilty plea to third-degree murder and conspiracy to commit aggravated assault. He was sentenced to an aggregate term of 20 to 40 years' incarceration, followed by 20 years' probation. Appellant and Kenneth proceeded to trial as co-defendants, both charged with third-degree murder, conspiracy to commit third-degree murder, aggravated assault, and conspiracy to commit aggravated assault. While the jury ultimately acquitted both Appellant and Kenneth of third-degree murder, it returned guilty verdicts on the remaining charges. Appellant was subsequently sentenced to 20 to 40 years' imprisonment for the conspiracy to commit third-degree murder conviction, as well as a concurrent term of

20 years' probation for the crime of aggravated assault. The offense of conspiracy to commit aggravated assault was deemed to merge for sentencing purposes.

Appellant filed a timely notice of appeal, as well as a timely concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Herein, he raises the following two issues for our review:

> A. The evidence was insufficient as a matter of law and against the weight of the evidence to convict Appellant of conspiracy to commit third-degree murder, aggravated assault and conspiracy to commit aggravated assault where there was no evidence presented that Appellant had the intent to kill or ... that he was implicated in any conspiracy or accomplice liability.
>
> B. The sentence was excessive and an abuse of discretion based on the sentencing guidelines and the social history that was presented to the court. The sentence also violated the State and Federal Constitutions in that it constitutes cruel and unusual punishment.

Appellant's Brief at 6.

Our Court filed an initial memorandum decision in this case on February 10, 2011. Therein, we concluded that the offense of conspiracy to commit third[-]degree murder was a legal nullity. **Commonwealth v. Kline**, 148 MDA 2009, unpublished memorandum at 6-8 (Pa. Super. filed February 10, 2011).[1] We felt compelled to reach this result based on this Court's prior decision in **Commonwealth v. Clinger**, 833 A.2d 792 (Pa. Super. 2003) (stating "third[-]degree murder is a killing done with malice that **is neither intentional** nor committed in the course of a felony"), and our Supreme Court's interpretation of **Clinger** in **Commonwealth v. Weimer**, 977 A.2d 1103, 1105 (Pa. 2009) (stating, in a parenthetical accompanying a citation to **Clinger**, that **Clinger** stands for the proposition that "because it is impossible for one to intend to commit an unintentional act, it is impossible to commit the crime of conspiracy to commit third[-]degree murder").

- 4 -

[1] We acknowledged that Appellant did not challenge his conviction for conspiracy to commit third[-] degree murder on this basis. However, we reasoned that we were required to raise this issue *sua sponte*, as it impacted the legality of Appellant's sentence and the jurisdiction of the trial court to impose a sentence for that offense. *Id.* at 6 n.2 (citing *Commonwealth v. Kozrad*, 499 A.2d 1096, 1097–98 (Pa. Super. 1985) ("It is required of this Court to correct an illegal sentence *sua sponte*."); *Commonwealth v. Boerner*, 422 A.2d 582, 588 n.11 (Pa. Super. 1980) (finding that where it is beyond the power of the court to impose a sentence, an issue regarding the court's jurisdiction is raised)).

Because we concluded in our initial memorandum decision that there was no such offense as conspiracy to commit third[-] degree murder, we vacated Appellant's judgment of sentence for that offense and remanded for resentencing. Consequently, we did not address the merits of Appellant's sentencing issue. We did, however, assess the merits of his challenge to the sufficiency and weight of the evidence to support his convictions for aggravated assault and conspiracy to commit aggravated assault. We concluded that the evidence was sufficient to support Appellant's convictions for those crimes, and that the jury's verdict was not against the weight of the evidence. *See Kline*, 148 MDA 2009, at 8–13.

On October 30, 2013, our Supreme Court issued *Commonwealth v. Fisher*, 80 A.3d 1186 (Pa. 2013), which abrogated *Clinger* and held that conspiracy to commit third[-] degree murder is a cognizable offense. *Id.* at 1195. On March 5, 2014, our Supreme Court issued a *per curiam* order granting allowance of appeal in this case and vacating our decision pursuant to *Fisher*. The Court remanded this matter to our Court for further proceedings.

*Commonwealth v. Kline*, 106 A.3d 155, 148 MDA 2009 (Pa. Super. filed August 8, 2014) (unpublished memorandum at 1-7).

On remand, this Court addressed Appellant's challenge to his convictions as follows:

- 5 -

Criminal conspiracy is defined by our Crimes Code as follows:

> **(a) Definition of conspiracy.—**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a). Our Court has also summarized the elements of criminal conspiracy as follows:

> To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. This overt act need not be committed by the defendant; it need only be committed by a co-conspirator.

***Commonwealth v. McCall***, 911 A.2d 992, 996 (Pa. Super. 2006) (citations and quotation marks omitted).

In regard to Appellant's specific conviction for conspiracy to commit aggravated assault, this Court has stated that to sustain such a conviction, "the Commonwealth need only establish intent to commit or aid in the commission of aggravated assault, an agreement with a co-conspirator, and an overt act in furtherance of the conspiracy." ***Commonwealth v. Thomas***, 65 A.3d 939, 945 (Pa. Super. 2013). Moreover, for the offense of conspiracy to commit third[-]degree murder, our Supreme Court has clarified:

> If a defendant acts with his co-conspirators in brutally attacking the victim with the intention of killing him, he conspires to commit first degree murder; if the defendant performs the same action but does not care whether the victim dies or not, he conspires to commit third[-]degree murder. In the latter example, the defendant did not ... intend to aid an unintentional murder; rather, he intended to aid a malicious act resulting in a killing. Malice is not the absence of **any** intent, just the specific intent to kill. Where ... the defendant intends the underlying act (the beating) which results in death, the evidence supports the charge of conspiracy to commit third[-]degree murder.

**Fisher**, 80 A.3d at 1195 (emphasis in original).

In this case, it is clear from the factual summary, stated supra, that the evidence was sufficient to enable the jury to find, beyond a reasonable doubt, that Appellant conspired with Gearhart and Kenneth to commit the aggravated assault and third[-]degree murder of Quinn. Namely, witnesses testified that after Appellant left the bar, he was looking for a fight and tried to engage several people in altercations, including his companion, Houser. When Appellant and his cohorts came upon Quinn, they encircled him and Appellant threw the first punch. Appellant admitted that during the course of the fight, he saw Gearhart pick up an object and hit Quinn hard from behind. After Quinn fell to the sidewalk, Appellant stood over his body taunting Quinn with insults. Appellant then got back into Houser's vehicle and directed him to leave the scene, admittedly in an attempt to run from the police.

This evidence proved that Kenneth, Gearhart, and Appellant conspired to viciously attack Quinn, with the intent of causing him serious bodily injury, and without regard for whether Quinn lived or died. Therefore, the evidence was sufficient to convict Appellant of the crimes of conspiracy to commit aggravated assault and conspiracy to commit third[-]degree murder. Consequently, Appellant is also criminally liable for the aggravated assault committed by Gearhart. **See Commonwealth v. Lambert**, 795 A.2d 1010, 1016 (Pa. Super. 2002) ("Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for

the actions of his co-conspirators taken in furtherance of the conspiracy.") (citations omitted).

*Kline*, 148 MDA 2009 (unpublished memorandum at 4-5). On August 8, 2014, we affirmed Appellant's judgment of sentence. *Id.* at 10-11.

On February 27, 2015, Appellant field a timely *pro se* PCRA petition. The PCRA court appointed counsel who filed an amended PCRA petition on April 15, 2016. On February 28, 2017, the PCRA court filed its notice of intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907, and on May 12, 2017, the PCRA court dismissed Appellant's PCRA petition. On June 12, 2017, Appellant filed a timely notice of appeal. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues for this Court's consideration:

> 1. Did the PCRA Court err in finding that trial/appellate counsel was not ineffective for failing to argue that conspiracy to commit third[-]degree murder is a legal nullity and failure to make the argument denied Appellant his due process rights under the United States and Pennsylvania constitutions?
>
> 2. Did the PCRA Court err in finding that trial/appellate counsel was not ineffective for failing to object to the jury instructions concerning the state of mind Appellant must have when allegedly committed conspiracy to commit third[-]degree murder?

Appellant's Brief at 4.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA

court's determination is free of legal error. ***Commonwealth v. Phillips***, 31 A.3d 317, 319 (Pa. Super. 2011). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. ***Id***.

When considering an allegation of ineffective assistance of counsel, counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) petitioner was prejudiced by counsel's action or omission. ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" ***Commonwealth v. Reed***, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any one of the three prongs. ***Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013). The burden of proving ineffectiveness rests with the appellant. ***Commonwealth v. Rega***, 933 A.2d 997, 1018 (Pa. 2007).

Appellant first argues that Appellant's trial counsel was ineffective for failing to argue that conspiracy to commit third-degree murder is a legal nullity, and this failure denied Appellant due process. We disagree.

As set forth above, the Supreme Court of Pennsylvania has concluded that conspiracy to commit third-degree murder is not a legal nullity. *Fisher*, 80 A.3d at 1195-1196. While Appellant presents this argument in terms of due process, we conclude that no relief is due. Appellant's due process claim is based on his assertion that conspiracy to commit third-degree murder requires an act in furtherance of the underlying crime and a reasonably foreseeable consequence. Appellant's Brief at 9 (citing *Pinkerton v. United States*, 328 U.S. 640 (1946) (discussing, *inter alia*, the elements of conspiratorial liability)). However, the Supreme Court of Pennsylvania addressed these factors in *Fisher* and opined:

> Our review … leads us to conclude the absence of intent to kill does not preclude a defendant from being convicted of conspiracy to commit third[-]degree murder. Absence of specific intent is not an element of third[-]degree murder; the third[-]degree murder statute does not list elements or specify a requisite *mens rea*, but rather categorizes this degree of homicide as "all other kinds of murder" not falling within the definition of first or second degree murder. 18 Pa.C.S. § 2502(c). The Crimes Code further provides where a statute, such as § 2502(c), does not prescribe the culpability sufficient to establish a material element of the offense, such element is established if the defendant acted "intentionally, knowingly or recklessly." *Id.*, § 302(c). Thus, a defendant who acts intentionally in attacking his victim may still be convicted of third[-]degree murder.

*Fisher*, 80 A.3d at 1195 (some citations omitted). The *Fisher* Court concluded that convictions for conspiracy to commit third-degree murder were appropriate where the conspirators agreed to engage in the intentional,

malicious attack of the victim, **without regard to the consequences of that act**, and that act resulted in the victim's death. *Id.* at 1196.

The same follows true here. As discussed above, when this case was remanded, a prior panel of this Court concluded that the evidence established that Appellant was guilty of conspiracy to commit third-degree murder pursuant to the rationale espoused in *Fisher*. Specifically, in applying *Fisher*, that panel stated "Kenneth, Gearhart, and Appellant conspired to viciously attack Quinn, **with the intent of causing him serious bodily injury, and without regard for whether Quinn lived or died.** Therefore, the evidence was sufficient to convict Appellant of the crimes of conspiracy to commit aggravated assault and conspiracy to commit third[-]degree murder." *Kline*, 148 MDA 2009 (unpublished memorandum at 10) (emphasis added).

We are required to follow the precedent of our Supreme Court, and we must adhere to the holding in *Fisher* wherein the Court concluded that conspiracy to commit third-degree murder is a viable criminal charge. *See Commonwealth v. Reed*, 107 A.3d 137, 143 (Pa. Super. 2014) ("This Court is bound by existing precedent under the doctrine of *stare decisis* and continues to follow controlling precedent as long as the decision has not

been overturned by our Supreme Court.").[2]  Accordingly, Appellant's counsel

cannot be deemed ineffective for failing to argue that conspiracy to commit

third-degree murder is a legal nullity because our Supreme Court has held

definitively that the charge is proper.  *Fisher*, 80 A.3d at 1195.

Appellant next argues that the PCRA Court erred in finding that trial

and appellate counsel were not ineffective for failing to object to the jury

instructions.  Appellant's Brief at 13.  Specifically, Appellant claims that the

jury instruction was deficient with respect to the state of mind one must

have in order to be convicted of conspiracy to commit third-degree murder.

*Id.*

> We review jury instructions under the following standard:
>
> When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper.  We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration.  Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

---

[2]  Moreover, this Court's prior decision on remand applying *Fisher* and holding that the evidence was sufficient for conviction is now the law of the case.  *See Commonwealth v. Starr*, 664 A.2d 1326, 1331 (Pa. 1995) (stating that the law of the case doctrine "refers to a family of rules which embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter.").

***Commonwealth v. Roane***, 142 A.3d 79, 95 (Pa. Super. 2016) (citations omitted).

The record reveals that the trial court instructed the jury, in relevant part, as follows:

> Third[-]degree murder is any killing with malice. To find the defendant guilty of this offense, you must find that the following three elements have been proven beyond a reasonable doubt: First, that Kyle Quinn is dead; second, that the defendant killed him; and third, that the defendant did so with malice.
>
> The word malice as I am using it has a special legal meaning. It does not mean simply hatred, spite, or ill will. Malice is a shorthand way of referring to particular mental states that the law regards as being bad enough to make a killing murder.
>
> For murder of the third[-]degree, a killing is with malice if the perpetrator's actions show his wanton and willful disregard of an unjustified and extremely high risk that his conduct would result in death or serious bodily injury to another. In this form of malice, the Commonwealth need not prove that the perpetrator specifically intended to kill another. The Commonwealth must prove, however, that the perpetrator took action while consciously; that is, knowingly, disregarding the most serious risk he was creating and that, by this disregard of that risk, the perpetrator demonstrated his extreme indifference to the value of human life.
>
> When deciding whether the defendant acted with malice, you should consider all the evidence regarding his words, conduct, and the attending circumstances that may show his state of mind. If you believe that a defendant intentionally used a deadly weapon on a vital part of Kyle Quinn's body, you may regard that as an item of circumstantial evidence from which you may, if you choose, infer that defendant acted with malice.
>
> You should realize that you may choose to find that the defendant acted with malice if you find an intent to cause serious bodily injury even if you find that there was no intent to kill. A defendant's words or actions following a crime may also establish evidence of malice.

- 13 -

* * *

The information alleges that the defendants conspired with each other and/or Timothy Gearhart to commit murder and aggravated assault and that one or several overt acts were done. As far as numbers are concerned, the minimum requirements for a conspiracy are an agreement between two people to commit one crime and one overt act committed by one of them. Thus, you may find a defendant guilty if you are satisfied that he conspired with at least one alleged co-conspirator to commit at least one alleged object crime and that he or the other person did at least one alleged overt act in furtherance of the conspiracy.

Before a defendant can be convicted, the 12 jurors must agree on the same person with whom the defendant allegedly conspired with, the same object crime, and the same overt act.

In order to find a defendant guilty of a conspiracy to commit any of the offenses listed as the objectives of this conspiracy, you must be satisfied but the following three elements have all been proven beyond a reasonable doubt: First, that the defendant agreed with the other persons that one or more of them would engage in conduct for the planning and/or commission of the specified crime; second, that the defendant and at least one other person to which all 12 jurors agree intended to promote or facilitate the committing of the specified crime; -- in other words, they share the intention to bring about that crime or to make it easier to commit that crime - - and, third, that the defendant or the other person did the overt act that all 12 jurors agree to and did the overt act or acts in furtherance of their conspiracy.

As a general rule, if conspirators have agreed to commit a crime and, after that, one of the conspirators does any act to carry out or advance their agreement, then he has done an overt act in furtherance of the conspiracy. The other conspirators do not have to participate in the act or even know about it. In a sense, they are partners. And, like partners, they are responsible for each other's actions.

N.T., 11/10/08, at 136-144.

- 14 -

These instructions parallel Pennsylvania Suggested Standard Criminal Jury Instructions 12.903A, 12.903B, and 15.2502C and informed the jury regarding the elements of the crimes of third-degree murder and conspiracy, the *mens rea*, and shared criminal liability. The foreseeability aspect, which Appellant alleged was absent from the charge, was specifically addressed. The trial court's instruction explained the requirement of an unjustified and extremely high risk that conduct would result in death or serious bodily injury and that the Commonwealth must prove that the actor knowingly disregarded the most serious risk he was creating and demonstrated his extreme indifference to the value of human life. N.T., 11/10/08, at 137. Thus, there is no merit to Appellant's challenge to the jury charge.

As part of this second issue on appeal, Appellant again assails the foreseeability component of conspiracy to commit third-degree murder, citing *Pinkerton*, and he claims that conspiracy to commit third-degree murder is not a viable charge. Appellant's Brief at 13-14. However, as we discussed above, conspiracy to commit third-degree murder is a cognizable criminal charge. *Fisher*, 80 A.3d at 1195.

After review, we find that the jury instruction adequately and accurately apprised the jurors of the proofs the Commonwealth was required to establish beyond a reasonable doubt, we reiterate that conspiracy to commit third-degree murder is a cognizable crime, and we conclude that Appellant's argument is meritless. Because counsel cannot be deemed

ineffective for failing to raise a meritless claim, Appellant's second issue fails.

***See Commonwealth v. Smith***, 167 A.3d 782, 788 (Pa. Super. 2017) (stating that counsel cannot be found ineffective for failing to pursue a meritless claim).

For the reasons set forth above, Appellant is entitled to no relief. Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/28/2017